IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CALVIN CARTER, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-09-114 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court[1] in this social security appeal are Plaintiff's Motion for Summary Judgment (Document No. 12), and Defendant's Motion for Summary Judgment and Memorandum in Support (Document No. 13). Having considered the motions, and the parties' additional briefing, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

**I.     Introduction**

Plaintiff Calvin Carter ("Carter") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his application for

---

[1]On May 1, 2009, the parties consented to trial before the undersigned Magistrate Judge. Upon consent, the case was transferred to the Magistrate Judge for all proceedings. (Doc. No. 10).

supplemental security income benefits ("SSI"). Carter maintains that the Administrative Law Judge ("ALJ") failed to develop the record, and made improper and unsupported findings at steps two, four and five. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that it should therefore be affirmed.

## II.  Administrative Proceedings

On September 28, 2005, Carter protectively filed for SSI benefits, claiming he has been unable to work since September 19, 2005, as a result of back, shoulder and knee problems. (Tr. 68, 74, 94). The Social Security Administration denied his application at the initial and reconsideration stages. After that, Carter requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ held a hearing on December 13, 2007, at which Carter's claims were considered *de novo*. (Tr. 1966-1975). On December 28, 2007, the ALJ issued his decision finding Carter not disabled. (Tr. 16-24). The ALJ found that Carter had not engaged in substantial gainful activity since September 28, 2005. Further, the ALJ found that Carter had the following medically determinable severe impairments: hypertension, degenerative disc disease, and degenerative joint disease of the left knee, but that none of these, singly or in combination, met or equaled an impairment listed in Appendix 1 of the Regulations. The ALJ then determined that Carter had the residual function capacity for sedentary work, and that upon application of the medical vocational guidelines, he was not disabled.

Carter then asked for a review by the Appeals Council of the ALJ's adverse decision. The Appeals Council will grant a request to review an ALJ's decision if any of the following

circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. After considering Carter's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on November 7, 2008, that there was no basis upon which to grant Carter's request for review. (Tr. 2-5). The ALJ's findings and decision thus became final. Carter has timely filed her appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both Carter and the Commissioner have filed Motions for Summary Judgment (Document Nos. 12 & 14). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 1975. There is no dispute as to the facts contained therein.

**III.     Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the

record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no `substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

**IV.    Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986).

> The Commissioner applies a five-step sequential process to determine disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of

proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, Carter focuses most of his complaints on the ALJ's conclusions at step two. In particular, Carter maintains that the ALJ erred at step two when he failed to find, and failed to fully develop the record so that he could find, that Carter's chronic chest pain and depression were severe impairments. Carter argues that his chronic chest pain and depression should have been considered severe impairments, and that the ALJ's failure to consider them as such affected the ALJ's analysis at steps four and five. The Commissioner, in response, argues that Carter's chest pain and depression were cocaine-induced, and that the ALJ properly found Carter's alleged depression to be non-severe. Given the parties' step-two arguments, the Court must first determine, prior to considering Carter's other issues, whether the ALJ erred at step two.

## V. Discussion – Step Two

At step two, the claimant bears the burden of showing that he has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.[2] The step two requirement that the claimant have a severe impairment is

---

[2] The ability to do most work activities encompasses "the abilities and aptitudes necessary to do most jobs." *Williams v. Sullivan*, 960 F.2d 86, 88 (8th Cir. 1992). Examples include physical functions such as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying, or handling;

generally considered to be "a de minimis screening device to dispose of groundless claims." *Smoven v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). Simply put, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984); 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999); 20 C.F.R. § 404.1523. Even though the burden at step two lies with the claimant, the claimant need only make a minimal showing to move to the next step in the five step sequential process. With respect to a minimal showing, the mere presence of a condition is not sufficient to make a step two showing. *See Bowen,* 482 U.S. at 153.

Here, as set forth above, the ALJ found that Carter had three severe impairments: hypertension, degenerative disc disease, and degenerative joint disease of the left knee. (Tr. 18). The ALJ also concluded, as follows, that Carter's depression was not severe:

> On December 7, 2005, a state agency medical consultant, Jim Cox, M.D., reviewed the claimant's medical records and completed a Psychiatric Review Technique Form concerning the claimant (Exhibit 1F, page 449). Dr. Cox reported that the claimant

---

capacities for seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work situation. *Id.* at 88-89; 20 C.F.R. § 1521(b).

7

>had depression, NOS. However, he stated that the claimant only had mild restrictions of activities of daily living and mild difficulties maintaining social functioning. He stated that the claimant had mild difficulties in maintaining concentration, persistence, or pace. The claimant had no episodes of decompensation of extended duration (Exhibit 1F, page 439). This opinion is accepted as being generally supported by objective clinical findings and consistent with the evidence as a whole.
>
>Having carefully reviewed the evidence, the Administrative Law Judge finds that the claimant's ability to perform basic work-related activities such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting (20 C.F.R. 416.921(b)). In reaching this conclusion, the Administrative Law Judge considered the claimant's subjective complaints in light of Social Security Ruling 96-7p and 20 C.F.R. 416.929.

(Tr. 19). No assessment was made at step two whether Carter's chronic chest pain was severe. Instead, the ALJ determined, in connection with his analysis at step four, that Carter's chest pain was related solely to his use of cocaine. The ALJ equated Carter's depression and his chest pains with his cocaine use as follows:

>The claimant was hospitalized from January 10, 2005, to January 12, 2005, at the Veteran's Administration Hospital due to chest pain (Exhibit 1F, page 248 to 247). The claimant's cardiac enzymes were negative, thereby indicating that he had not experienced a heart attack. The claimant reported that he had experienced chest pain after using cocaine.
>
>The claimant was again hospitalized from October 26, 2005, to October 19, 2005, at the Veterans Administration Hospital (Exhibit 1F, page 298). While hospitalized, the claimant's psychiatrist diagnosed him with substance induced mood disorder (Exhibit 1F, page 283). The claimant had cocaine dependence with cocaine induced psychosis (Exhibit 1F, page 289).
>
>* * *
>
>The claimant was again hospitalized on January 5, 2006, due to chest pain occurring after cocaine use (Exhibit 1F, page 476). Upon discharge on January 11, 2006, the claimant's physician diagnosed him with cocaine dependence, and drug induced mood disorder with psychotic features (Exhibit 1F, page 502). The claimant was discharged due to excessive no-shows and a positive urine drug screen.

8

(Tr. 21, 22).

The parties do not dispute that the time period from September 28, 2005, through December 28, 2007, was the only time period under consideration. A careful and fair reading of the record with respect to that period of time shows that the ALJ's assessment of Carter's alleged chest pain and depression is supported by substantial evidence. The record also shows that the ALJ did not fail to develop the record as to Carter's chest pain and alleged depression, and that Carter knowingly and voluntarily waived his right to representation at the hearing before the ALJ.

With respect to Carter's first claim, that the ALJ failed to develop the record regarding his chest pain and depression, and that the ALJ had a heightened duty to do so given that he was not represented by counsel, the record shows, as will be set forth in more detail below, that Carter's chest pain, and any alleged depression he may have had, were directly and solely related to his use of cocaine/crack cocaine. Therefore, while it is true that the ALJ did not question Carter at the hearing about his chest pain and his alleged depression, Carter's medical records did not reveal any basis for doing so. Moreover, the record shows that Carter was informed of his right to representation at the hearing, and waived that right both orally and in writing. (Tr. 33, 1968).

As for Carter's second claim, that the ALJ erred at step two in not finding his chronic chest pain and depression to be severe impairments, the record supports the ALJ's assessment in this regard. The voluminous medical records, most of which are unrelated to the time period at issue, reveal that Carter has a long, documented history of substance abuse. Indeed, nearly every notation in his medical records, other than those related to his knee and back impairments, mentions his substance abuse problems. In addition, each complaint by Carter of chest pain is associated with his recent use of cocaine/crack cocaine. *See* Tr. 578, 585-86, 627, 654, 1143 (October 13, 2005); Tr.

9

315, 418, 430, 436, 1016 (January 4, 2006); Tr. 330-335, 388, 405 ( January 10, 2006); Tr. 998, 943-944 (May 26, 2006); Tr. 913-914 (February 28, 2007). Similarly, the few references to depression and/or a mood disorder are associated with Carter's recent use of cocaine/crack cocaine. Tr. 405, 459-471, 1230-1234, 1363. There are no medical records or treatment notes during the relevant time period evidencing any complaints by Carter of chest pain unrelated to his cocaine use, and no medical records or treatment notes that show ongoing treatment of any depression. Rather, the medical records and treatment notes all equate Carter's chest pains and any alleged depression with his frequent and continued use of cocaine/crack cocaine. Based on the medical records, the absence of any objective medical evidence and the absence of any medical opinion that Carter has chronic chest pains and depression that is ongoing, and unrelated to his use of cocaine, and the fact that Carter is not being treated, even with medication, for depression, the ALJ did not err at step two in his assessment that Carter's depression was not severe, and in his assessment of Carter's chest pain.[3]

## VI. Discussion – Step Four

Carter also complains about the ALJ's determination at step four that he had the residual functional capacity (RFC) for sedentary work. According to Carter, that RFC is inconsistent with the medical evidence which documents his knee, back and shoulder problems, his use of a cane and/or a knee brace to effectively ambulate, and his obesity. Carter maintains that the "ALJ should have found Plaintiff able to perform less than sedentary work with additional exertional, postural,

---

[3] Carter makes absolutely no mention in this appeal of his substance abuse problems, and has not asserted, alleged, or argued in any fashion that his substance abuse should have been considered a severe impairment at step two.

10

manipulative, mental, and environmental restrictions." Plaintiff's Motion for Summary Judgment (Document No. 12) at 11.

> The ALJ found, as follows, that Carter could perform a full range of sedentary work:
>
> The claimant testified at the hearing that he was unable to work because of left knee swelling. Additionally, the claimant testified that his knee gave out when walking or bending. The claimant further testified that he wore a back brace and a knee brace. Regarding his pain relief efforts, the claimant testified that he took ibuprofen and Tylenol for pain. He further testified that he took a hypertension medication. He used a heating pad for pain.
>
> During the day, the claimant testified that he was able to wash dished a little, fold clothes, and dust. He stated that he was able to vacuum and play dominoes. The claimant testified that he was able to walk to the park three times a week to feed the ducks.
>
> Regarding his functional limitations, the claimant testified that he could sit for 30 to 35 minutes before getting up to move. The claimant further testified that he could stand for 20 to 25 minutes and walk to the end of a hallway and back. The claimant testified that he could not lift or carry more than 20 to 25 pounds.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleges symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> In support of this conclusion, the Administrative Law Judge notes that the objective clinical findings do not support the claimant's alleged subjective symptoms or functional limitations. Specifically, the claimant has no neurological deficits, no serious orthopedic abnormalities, and no significant dysfunctioning of the bodily organs that would preclude a sedentary level of exertion. The medical evidence reveals that the claimant experienced a work-related injury on June 20, 2000 (Exhibit 1F, page 20). A pile of chairs fell on the claimant from a forklift (Exhibit 1F, page 33). An EMG and nerve conduction study performed on the claimant on August 14, 2000, was normal (Exhibit 1F, page 174). The claimant was hospitalized on November 15, 2000, due to internal derangement of the left knee (Exhibit 1F, page 21). Eric Scheffey, M.D., performed an arthroscopic surgery on the claimant's left knee.
>
> An MRI scan of the claimant's left knee performed on October 24, 2001, showed that he claimant's anterior horn had no tear (Exhibit 1F, page 638). Additionally, the

claimant's posterior horn had increased signal intensity consistent with a residual partial tear.

A CT scan post myelogram performed on the claimant on December 12, 2001, showed that the claimant had a disc bulge at L3-L4 and L4-L5 (Exhibit 1F, page 71). There was a mild indentation on the thecal sac and neural foramen. At L5-S1, there was a bulge with no mass effect (Exhibit 1F, page 71).

On May 30, 2002, Larry Likover, M.D., gave the claimant an examination for worker's compensation purposes (Exhibit 1F, page 90). Dr. Lickover [sic] reported that the claimant's myelogram and CT scan were normal for his age. He further reported that the claimant was capable of returning to work (Exhibit 1F, page 89). By June 18, 2004, one of the claimant's treating physicians, William Donovan, M.D., reported that the claimant was capable of doing modified work (Exhibit 1F, page 50). Progress notes from the Veterans Administration dated August 31, 2004, reveal that the claimant had left-sided facial fractures and fractures of the right orbit following an assault with a baseball bat (Exhibit 1F, page 244). However, the claimant's physician concluded that the claimant did not require surgery (Exhibit 1F, page 223).

The claimant was hospitalized from January 10, 2005, to January 12, 2005, at the Veterans Administration Hospital due to chest pain (Exhibit 1F, page 248 to 247). The claimant's cardiac enzymes were negative, thereby indicating that he had not experienced a heart attack. The claimant reported that he had experienced chest pain after using cocaine.

The claimant was again hospitalized from October 16, 2005, to October 19, 2005, at the Veterans Administration Hospital (Exhibit 1F, page 298). While hospitalized, the claimant's psychiatrist diagnosed him with a substance induced mood disorder (Exhibit 1F, page 283). The claimant had cocaine dependence with cocaine induced psychosis (Exhibit 1F, page 289).

On February 10, 2005, Andrew Jones, M.D., examined the claimant (Exhibit 1F, page 343). Dr. Jones reported that the claimant had internal derangement of the left knee, low back pain, sacroiliac dysfunction, and sciatica. Although the claimant was unable to extend his left knee, his neurologic examination was non-focal. An MRI scan of the claimant's left knee performed on November 27, 2005, showed signal within the posterior horn of the medial meniscus suggesting degeneration (Exhibit 1F, page 524). The findings do not exclude a small interstitial tear. However, all of the claimant's ligaments were intact. There were no chondromalacia or marrow signal abnormalities.

The claimant was again hospitalized on January 5, 2006, due to chest pain occurring after cocaine use (Exhibit 1F, page 476). Upon discharge on January 11, 2006, the

claimant's physician diagnosed him with cocaine dependence, and drug induced mood disorder with psychotic features (Exhibit 1F, page 502). The claimant was discharged due to excessive no-shows and a positive urine drug screen.

On September 11, 2006, Razvan Scobercia, M.D., performed another arthroscopic surgery on the claimant's left knee (Exhibit 1F, page 698). Dr. Scobercia reported that the claimant had under surface degenerative tears of the medial and lateral meniscus. Thereafter, on September 11, 2006, the claimant reported that his pain was at zero on a scale from zero to 10 (Exhibit 1F, page 706).

Thus, the record shows that the claimant's knee impairment has been corrected with surgery. The claimant is still able to ambulate effectively following his surgeries. Additionally, the claimant has no end organ damage from his hypertension. The claimant's degenerative disc disease has not caused any motor, sensory, or reflex loss. The Administrative Law Judge may properly consider the objective medical evidence in testing credibility and finding the subjective complaints exaggerated. Johnson v. Heckler, 767 F.2d 180 (5th Cir. 1985).

As noted, the claimant testified that he had returned to work in July 2007 and April 2006. He had worked setting up banquets and doing maintenance. Because the claimant was able to perform these light duty jobs, he demonstrated an ability to perform light exertion.

As for the opinion evidence, on November 12, 2004, William Donovan, M.D., an orthopedic surgeon, examined the claimant (Exhibit 1F, page 339). Dr. Donovan diagnosed him with a torn medial meniscus, dislocation of the left patella, and a herniated nucleus pulposus. Dr. Donovan stated that the claimant was "totally disabled and unable to work" (Exhibit 1F, page 339).

This opinion is given little weight. Insofar as Dr. Donovan states that the claimant is "disabled," his opinion concerns an issue reserved to the Commissioner. The Commissioner has the final statutory responsibility to make determinations such as this (Social Security Ruling 96-5p). The evidentiary weight to be given to such an opinion depends upon whether it is supported by specific and complete clinical findings or other objective medical evidence and whether it is consistent with the other evidence. This opinion is not persuasive because it is unsupported by objective clinical findings and is inconsistent with the evidence considered as a whole.

As noted, an MRI scan of the claimant['s] left knee performed on October 24, 2001, showed that the claimant's anterior horn had no tear (Exhibit 1F, page 638). Additionally, the claimant's posterior horn had increased signal intensity consistent with only a residual partial tear. The claimant is able to ambulate effectively.

> Moreover, his degenerative disc disease has not resulted in motor, sensory, or reflex loss.
>
> While no doubt the claimant has some pain and discomfort associated with his condition, such symptoms are found to be mild to moderate at most. It is well settled, as a matter of law, that the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of total disability. Epps v. Harris, 624 F.2d 1267, 1274 (5th Cir. 1980). Thus, his allegations concerning his subjective symptoms are found tp be credible to the extent that he is unable to perform light and medium work, but not credible to the extent that they preclude him from all work activities.

(Tr. 20-23)

The ALJ's determination that Carter had the RFC for a full range of sedentary work is supported by substantial evidence. "Sedentary work" is defined at 20 C.F.R. §§ 404.1567(a) and 416.967(a), and requires the ability to lift or carry 10 pounds occasionally, to stand or walk for at least two hours in an eight hour workday (with normal breaks), to sit for six hours in an eight hour workday (with normal breaks), and to occasionally stoop or bend. Here, Carter testified at the hearing that he could engage in activities that fall within the purview of sedentary work. He testified that he has to walk up two flights of stairs to his residence, that he could walk down the hall and to the park and back, could help with household chores, including washing dishes, vacuuming, and dusting, and could lift regular household items, but not items weighing over 20-25pounds. (Tr. 1972-1974). Carter also testified that he wears a knee brace, but made no mention of any need for a cane. (Tr. 1972). Finally, Carter testified that he had worked a short time at a motel, helping with the laundry, but that he had stopped working because his employer cut back. (Tr. 1970). He further stated he was currently looking for work. (Tr. 1971-1972). Carter's own testimony supports the ALJ's determination that he can engage in sedentary work.

14

The objective medical evidence also supports the ALJ's determination that Carter can engage in a full range of sedentary work. In November 2004, Carter's left knee pain was evaluated. (Tr. 214-216). At that time, his treating physician, Dr. Donovan, noted Carter's need for a knee brace and a walking cane, and recommended arthroscopic surgery. (Tr. 214-216). From that time until September 2006, when Carter underwent a left knee arthroscopy (200-212), Carter was able to work, as he testified to at the hearing. Following the left knee arthroscopy, Carter reported that he no pain in his left knee. (Tr. 200-212). The objective medical evidence for the relevant time prior, coupled with Carter's testimony as to his functional abilities, supports the ALJ's determination that Carter had the RFC for a full range of sedentary work. In particular, while Dr. Donovan noted that Carter needed a walking cane in November 2004, well before the time period at issue herein, no mention is made in any medical records during the relevant period that Carter needed a walking cane to effectively ambulate.

As for Carter's complaint that the ALJ failed to take into consider his obesity when determining his RFC, while there are medical records that denote Carter as being "obese," no mention is made anywhere in the medical records that Carter's weight has had any effect on his knee and back impairments, or that it has affected Carter's ability to engage in sedentary work.

In all, the objective medical evidence and Carter's own testimony as to his functional abilities support the ALJ's determination that he could engage in a full range of sedentary work. As there was no evidence in the record that Carter needed to use a cane to effectively ambulate, that his use of a knee brace impaired his ability to ambulate, or that his obesity affected his ability to engage in sedentary work, the ALJ's RFC determination is supported by substantial evidence.

## VII. Discussion – Step Five

In his final issue, Carter complains about the ALJ's use of the medical vocational guidelines for his ultimate disability determination. According to Carter, because he had non-exertional limitations, use of the medical-vocational guidelines was improper.

The ALJ determined, as set forth above, that Carter had the ability to engage in a full range of sedentary work. That determination was, as set forth above, supported by substantial evidence. Given Carter's RFC, and the absence of any non-exertional limitations, the ALJ could properly rely on the medical vocational guidelines for his determination that Carter was not disabled. *See Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) ("Use of the ''Grid Rules'' [medical vocational guidelines] is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity."). As the ALJ could rely on the medical vocation guidelines, and properly applied them to this case, substantial evidence supports the ALJ's decision that Carter was not disabled between September 28, 2005, and December 28., 2007.

## VIII. Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration and that substantial evidence supports a finding of "not disabled" on these facts. Accordingly, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 13) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 12) is DENIED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

Signed at Houston, Texas, this 2nd day of February, 2010.

*Frances H. Stacy*
Frances H. Stacy
United States Magistrate Judge